[Civ. No. 7662. First Appellate District, Division One.—April 14, 1931.]

GUST JOHNSON et al., Respondents, v. L. DE WAARD et al., Appellants.

Leslie L. Heap and Arlo D. Poe for Appellants.

R. A. Jarrott for Respondents.

WARD, J., *pro tem.* — Defendants de Waard & Sons, bonded by the Hartford Accident and Indemnity Company, contracted with the Los Angeles County Flood Control District to construct the Altadena storm drain. A part of this improvement consisted in excavating and concreting a tunnel, together with some work to be performed upon a drift or incline.

De Waard & Sons entered into an oral agreement, which was subsequently reduced to writing, whereby they subcontracted to the plaintiffs the excavating work at $8 per lineal foot, and the timbering at $5 per 1,000 b. m. feet of lumber put in place for timbering the tunnel. The written contract provided that de Waard & Sons should supply air compressor, pipe-line, track, cars, lumber, water, lights, tools, powder, fuse and caps free of charge at the power house or at the heading outside the tunnel. The equipment was to be returned in good condition, except for usual wear and tear. Payments were to be made as follows: Ninety per cent when received by de Waard & Sons from the Los An-

geles County Flood Control District and the balance upon completion and acceptance of the work.

Plaintiffs based their claim upon the original oral contract. Defendants presented a copy of the written contract as part of the answer and filed a counterclaim. The court found that the work was commenced under an oral contract, the terms of which were later reduced to writing; that plaintiffs did not agree to pay defendants for any equipment; that defendants de Waard & Sons charged against plaintiffs rental for the use of machinery, tools, etc., and certain compensative insurance, both of which were furnished by de Waard voluntarily, and that plaintiffs did not become indebted therefor; that plaintiffs excavated 1474 feet of tunnel and incline and set in place 51,000 feet of timber for which plaintiffs were entitled to receive $12,047; that $10,726 had been paid and that plaintiffs were entitled to be paid the sum of $1320.74; that during the progress of the excavating work de Waard & Sons, without the consent of plaintiffs, constructed the concrete tunnel walls in the east end of the tunnel which necessitated that plaintiffs cease work at the upper end and caused plaintiffs to transport the excavated material much further than they would be required to do if plaintiffs had delayed the concrete work; that about this period de Waard & Sons notified plaintiffs of their refusal to dispose of the excavated material or to promptly pay discharged men, etc., and that they would not credit plaintiffs for the use of equipment which theretofore they had charged against plaintiffs without the latter's consent; that plaintiffs gathered up the tools, etc., left them at the entrance to the tunnel and discontinued work. The court found that defendants were not entitled to anything upon the counterclaims, and gave judgment to plaintiffs for $1320.74 against the de Waards and the Hartford Accident and Indemnity Company.

The evidence does not disclose that any complaint was made as to the character or efficiency of the work of plaintiffs by either de Waard or the representatives of the Flood Control District. While the evidence was conflicting, still, it was ample to prove that the action of the defendants in starting the concrete work on the eastern or upper end of the tunnel, as the court found, without the consent of the plaintiffs, interfered with the excavating by forcing

plaintiffs to use two instead of three approaches to the excavating work, which resulted in a longer haul, etc. Plaintiffs were entitled to finish the excavating without interference, hindrance, or delay and to live up to the terms of the written contract to "make proper progress". ▮ Appellants contend that the continuation of work for several weeks after the concrete work started acted as a waiver of plaintiffs' rights. To constitute a waiver, there must be an intentional forbearance to enforce a right. Appellants were not misled by the continuation of the excavating in the other entrances to the tunnel. During this period of time other disputes had arisen between the contracting parties. An effort was being made to adjust the differences, and not until it appeared hopeless did the respondents cease work. ▮ To constitute a waiver, there must be an existing right, benefit, or advantage; a knowledge, actual or constructive of its existence; an actual intention to relinquish it or such conduct as warrants an inference of the relinquishment. The evidence in this case does not indicate that plaintiffs intended to relinquish their right, and their objections to the conduct of appellants in other particulars could not leave appellants in that frame of mind wherein they could draw a reasonable inference of respondents' relinquishment of objections to appellants' breach by interference with their orderly work. Appellants point out that there was no formal or direct objection to concreting in the east end of the tunnel, but the evidence shows that respondents complained relative to the disposal of the excavated material, the lengthened haul, and the distance of the deposit site from the mouth of the tunnel, all of which was partially caused by the concreting work. The premature concreting work was a breach of the contract, which provided that respondents should "make proper progress" and sufficient evidence cannot be found to warrant the application of the doctrine either of waiver or of estoppel.

▮ The actual number of feet excavated seems to be agreed upon, except some seventy-four which the court found to be excavated during the last few days prior to discontinuance of work by respondents. Appellants contend that they were misled by a statement of the trial judge, which caused them to neglect to present evidence of the impossibility of the number of men on the job excavating

seventy-four feet of tunnel between the first and fifth of March. One of the respondents testified that during this period seventy-four feet had been excavated. The trial judge at one stage of the proceedings did state that evidence relative to the seventy-four feet was immaterial, but later indicated that the seventy-four feet would be considered, at which time appellants failed to offer the testimony of the engineer, and this, notwithstanding that several witnesses appeared thereafter. Appellants had ample opportunity to introduce this evidence if they had made the offer.

The complaint alleged an oral contract. This contract was subsequently reduced to writing. The answer set forth the written contract. During the trial all evidence relative to the terms of the oral contract was stricken out. The court's findings are based upon the written contract. Appellants now contend that there was a failure of proof of the allegations contained in the complaint. The terms of the oral contract and the written contract are not identical but both contracts cover the same subject matter, namely, the excavation of this tunnel. When a cause of action is based upon one contract and the proof establishes an entirely different contract, the case is one of failure of proof, but when the contract pleaded and the contract proved are essentially the same, the judgment may stand if the proof is sufficient. *Gillin* v. *Hopkins*, 28 Cal. App. 579 [153 Pac. 724], cited by appellants, was an action for breach of contract to pay money for services. The complaint alleged an agreement on the part of the defendants to pay the plaintiff a designated sum of money for such services while the evidence disclosed that the contract was that the plaintiff was to accept a certain number of shares of stock in full compensation for such services. The court held that the differences between the contract as alleged in the complaint and the proofs adduced by the plaintiff were so pronounced as to bring the case within the rule of section 471 of the Code of Civil Procedure, and presented a failure of proof of the allegations of the complaint, but that was a case wherein the allegations of the complaint were not proved in their general scope and meaning. There is quite a difference between paying in shares of stock and paying in money. *Bailey* v. *Brown*, 4 Cal. App. 515 [88 Pac. 518], also cited, was an action for breach of promise of marriage.

The plaintiff alleged in her complaint that the defendant agreed to marry the plaintiff upon her request at any time while the proof established that he agreed to marry her after and not before the death of her mother, who was still living. In that case there was an essential difference between the allegation and the proof. The other cases cited by appellant deal with the subject of variance rather than failure of proof. ■ A mere variance may be remedied by amendment, but a failure of proof is fatal. If there was no substantial or material difference in the terms and conditions between the oral agreement and the written contract, defendant was not prejudiced. (*Otten* v. *Spreckels*, 24 Cal. App. 251, 264 [141 Pac. 224].) If there was a substantial or material difference it was cleared up and cured by the answer, which contained the written contract. (*Antonelle* v. *Kennedy & Shaw Lumber Co.*, 140 Cal. 309 [73 Pac. 966].) All terms and conditions of the oral contract were eliminated by the trial court. The allegations of the complaint were proved in their general scope and meaning and defendants were not misled in the presentation of their evidence, nor prejudiced by the court in using the written contract as the basis of the findings.

■ Appellants contend that an item of $638 on employers' liability insurance was a proper charge against respondents. This policy, which was not delivered to the subcontractors, but which remained with de Waard & Sons, was canceled. A new policy was issued to de Waard & Sons which covered de Waard & Sons' and respondents' employees. This second policy was issued after respondents had objected to paying for the first one. A bill was made out by a representative of the insurance company and forwarded to one of the respondents, in care of de Waard & Sons. But we find no evidence that the bill was ever presented to any of the respondents. De Waard simply charged it as an expense against respondents. The court's finding that de Waard & Sons voluntarily caused this compensation to be furnished is supported by the evidence.

■ In the second count of the counterclaim, appellants allege that respondents became indebted to de Waard & Sons upon an open book account upon a balance in the sum of $1835.29 for material, equipment, etc. If any of these items were a part of the equipment set forth in the con-

tract, respondents were not liable; if any are additional equipment, etc., we agree with the trial court that they were furnished voluntarily and that plaintiffs did not become indebted therefor.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.